UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| PHIL and VICKIE SANDERS, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>BATELLE ENERGY ALLIANCE, LLC, as Plan Administrator for the Battelle Energy Alliance Employer Benefits Plan; and BLUE CROSS OF IDAHO HEALTH SERVICE, INC., an Idaho Corporation doing business under the assumed business name of BLUE CROSS OF IDAHO,<br><br>Defendants. | Case No.: 1:14-cv-00457-EJL-REB<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 24)** |

Now pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 24). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the undersigned enters the following Report and Recommendation:

## I. INTRODUCTION

Plaintiff Vickie Sanders is an enrollee in a Group Plan (the "Plan"), sponsored by Defendant Battelle Energy Alliance, LLC ("Battelle"). Defendant Blue Cross of Idaho Health Service, Inc. ("BCI") serves as the "Third Party Contract Administrator" to perform claims processing and other administrative services in relation to the Plan. The Plan provides for various benefits but also contains certain specified exclusions in its "Exclusions and Limitations" section. The only issue in this case is whether the determination that the requested services were not covered (because they fell within the "Investigational" exclusion) should be upheld. The undersigned recommends that it should.

**REPORT AND RECOMMENDATION - 1**

## II.  RELEVANT FACTUAL BACKGROUND

1. In 2013, Ms. Sanders suffered from constant and disabling pain, centered at the left sacroiliac joint.  After unsuccessfully attempting a number of conservative treatments, her treating physician, Dr. Philip McCowin, M.D., an orthopedic surgeon with Summit Orthopedics in Idaho Falls, Idaho, recommended that she undergo a sacroiliac joint fusion on the right side.

2. On October 17, 2013, Dr. McCowin sought preauthorization for this surgical intervention.  *See* 10/17/13 Ltr., attached as Ex. A to Diddle Aff. (Docket No. 24, Att. 3).

3. On October 21, 2013, BCI denied the request, stating in pertinent part:

> We have received your request for benefits for an SI joint fusion.  This notice is to inform you that the request for benefits has been denied based upon our review of your policy.
>
> Under the terms of your policy, benefits are not provided for the proposed service, supply, drug and other charges that are Investigational – any technology (service, supply, procedure, treatment, drug, device, facility, equipment or biological product), which is in a developmental stage or has not been proven to improve health outcomes such as length of life, quality of life, and functional ability.  A drug, device, procedure or treatment will be determined to be experimental or investigational if:
>
> • There is insufficient outcomes data available from controlled clinical trials published in the peer-reviewed literature to substantiate its safety and effectiveness for the disease or injury involved.
>
> • If required by the FDA, approval has not been granted for marketing.
>
> • A recognized national medical or dental society or regulatory agency has determined, in writing, that it is experimental, investigational, or for research purposes.
>
> • The written protocol or protocols used by the treating facility, or the protocol or protocols of any other facility studying substantially the same drug, device, procedure, or treatment, or the written informed consent used by the treating facility or by another facility studying the same drug, device, procedure, or treatment states that it is experimental, investigational, or for research purposes.
>
> If a technology is determined to be investigational, all services specifically associated with the technology, including but not limited to associated procedures,

**REPORT AND RECOMMENDATION - 2**

>treatments, supplies, devices, equipment, facilities or drugs will also be considered investigational.
>
>Blue Cross of Idaho may have applied internal medial policies, clinical criteria or guidelines in addition to your policy definition of Investigational, to support this denial. . . . .
>
>You have the right to appeal a claim decision involving the denial, reduction, termination of, or failure to provide or make payment in whole or in part for a benefit. . . . .
>
>If you would like to appeal our decision, please follow these steps: Write a letter stating the reasons you believe our decision is incorrect.  Urgent appeals may be submitted by phone and the documents in support of such appeal, may be submitted by facsimile.  Include comments, documents, medical records or other relevant information with your letter.  If this notice states that we made our decision based on medical necessity or investigational treatment exclusions, or relied on an internal guideline or similar criteria in making our decision, you may obtain a copy of that information free of charge. . . . .
>
>If we uphold our initial claim decision on appeal, you may have the right to file a second appeal.  An external review process may be available to you following completion of the internal review process.  Under section 502(a) of the Employment Retirement Income Security Act, you may also have the right to file a civil action following the exhaustion of the complete appeals process. Please refer to your policy or employee benefits document for the complete description of appeal processes available to you.

10/21/13 Ltr., attached as Ex. B to Diddle Aff. (Docket No. 24, Att. 3).[1]

    4.       On October 25, 2013, Ms. Sanders appealed BCI's denial of the preauthorization to BCI's Grievance and Appeal Coordinator.  *See* 10/25/13 Ltr., attached as Ex. C to Diddle Aff. (Docket No. 24, Att. 3).  Other than the appeal letter itself (and the references therein to Dr. McCowin's experience and his sacroiliac joint fusion recommendation), no additional information was submitted to BCI for review.  *See id*.

---

[1] This letter was sent to Ms. Sanders.  Also on October 21, 2013, a similar (but not identical) letter was sent to Dr. McCowin.  *See* 10/21/13 Ltr., attached as Ex. 1 to Wilkinson Aff. (Docket No. 26, Att. 3).  Any differences are immaterial for the purposes of this Report and Recommendation.

**REPORT AND RECOMMENDATION - 3**

> 5. On October 30, 2013, BCI's medical director sustained the original denial of the

preauthorization request, stating in pertinent part:

> After a review of your medical records, I determined that sacroiliac joint fusion surgery is considered investigational, including but not limited to percutaneous and minimally invasive techniques, based on our Medical Policy 6.01.23 (copy enclosed).[2] The scientific evidence is insufficient to determine the overall effect on health outcomes.
>
> The **DEFINITIONS SECTION** of your policy defines investigational as follows:
>
> • **Investigational** – any technology (service, supply, procedure, treatment, drug, devise, facility, equipment or biological product), which is in a developmental stage or has not been proven to improve health outcomes such

---

[2] The enclosed BCI Medical Policy – MP 6.01.23 Diagnosis and Treatment of Sacroiliac Joint Pain – was adopted from the Blue Cross Blue Shield Association Technology Evaluation Center ("TEC") Policy 6.01.23. *See* Mem. in Supp. of MSJ, p. 3 (Docket No. 24, Att. 1). BCI Medical Policy 6.01.23 states in pertinent part:

> Fusion/stabilization of the sacroiliac joint for the treatment of back pain presumed to originate from the SI joint is considered **investigational**, including but not limited to percutaneous and minimally invasive techniques. . . . .
>
> This policy was created in 2000 and has since been periodically updated with searches of the MEDLINE database. The most recent literature update was performed through January 17, 2013. . . . .
>
> There is limited prospective or controlled evidence from sacroiliac joint arthrography, injection therapy, radiofrequency ablation (RFA) or fixation/fusion. For radiofrequency ablation, there are two small RCTs that report short-term benefit, but these are insufficient to determine the overall effect on health outcomes. Further high-quality controlled trials are needed that compare specific procedures in defined populations to placebo an to alternative treatments. Case series are inadequate evidence due to the variable natural history of back pain, the presence of confounders of outcome, and the potential for a placebo effect. In general the literature regarding injection therapy on joints in the back is of poor quality. The current evidence on sacroiliac joint arthrography, injections, RFA, and fixation/fusion is insufficient to permit conclusions regarding the effect of these procedures on health outcomes. Therefore, these techniques are considered investigational for the diagnoses and treatment of sacroiliac joint pain.

MP 6.01.23, attached as Ex. F (at BEA 000008-9, 13-14) to Diddle Aff. (Docket No. 24, Att. 3) (emphasis in original).

**REPORT AND RECOMMENDATION - 4**

as length of life, quality of life, and functional ability. A technology is considered investigational if, as determined by BCI, it fails to meet any one of the following criteria:

- <u>The technology must have final approval from the appropriate government regulatory body</u>. This applies to drugs, biological products, devices, and other products/procedures that must have approval from the U.S. Food and Drug Administration (FDA) or another federal authority before they can be marketed. Interim approval is not sufficient. The condition for which the technology is approved must be the same as that BCI is evaluating.

- **The scientific evidence must permit conclusions concerning the effect of the technology on health outcomes.** The evidence should consist of current published medical literature and investigations published in peer-reviewed journals. The quality of the studies and consistency of results will be considered. The evidence should demonstrate that the technology can measure or alter physiological changes related to a Disease, injury, illness, or condition. In addition, there should be evidence that such measurement or alteration affects health outcomes.

- **The technology must improve the net health outcome.** The technology's beneficial effects on health outcomes should outweigh any harmful effects on health outcomes.

- **The technology must be as beneficial as any established alternatives.**

- <u>The technology must show improvement that is attainable outside the investigational setting</u>. Improvements must be demonstrated when used under the usual conditions of medial practice.[3]

If a technology is determined to be investigational, all services specifically associated with the technology, including but not limited to associated procedures, treatments, supplies, devices, equipment, facilities or drugs will also be considered investigational.

In determining whether a technology is investigational, BCI considers the following source documents: Blue Cross Blue Shield Association

---

[3] Ms. Sanders does not dispute the policy's definitions concerning "investigational." *See* Opp. to MSJ, pp. 2-3 (docket No. 26, Att. 1).

**REPORT AND RECOMMENDATION - 5**

> Technology Evaluation Center (TEC) assessments, the Blue Cross and Blue Shield Association Medical Policy Reference Manual as adopted by BCI, and Blue Cross of Idaho Medical Policies. BCI also considers current published medical literature and peer review publications based upon scientific evidence, and evidence-based guidelines developed by national organizations and recognized authorities.
>
> The **EXCLUSIONS AND LIMITATIONS SECTION** of your policy states the following:
>
>> **1.   General Exclusions and Limitations**
>> There are no benefits for services, supplies, drugs or other charges that are: . . . .
>>
>> **E.**   Investigational in nature.
>
> I regret that I am unable to allow benefits for sacroiliac joint fusion surgery, as you requested.

10/30/13 Ltr., attached as Ex. D to Diddle Aff. (Docket No. 24, Att. 3) (emphasis in original).

This letter also advised Ms. Sanders of her right to request an external review, stating:

> At Blue Cross of Idaho's discretion, we are allowing you the opportunity to request a non-urgent external review. Your written appeal must be received in our office within 30 days of the date of this letter, and should include any additional medical documentation you feel supports your position. Your written external review request, along with the medical records on file at Blue Cross of Idaho and any additional information you wish to include, will be forwarded to an Independent Review Organization (IRO). The IRO will assign a specialist of the appropriate specialty based on the proposed services to complete an independent review. The results of the independent external review will be binding on Blue Cross of Idaho. . . . .
>
> If you do not wish to request an independent external review, you are entitled to file a civil action under section 502(a) of the Employment Retirement Income Security Act (ERISA). . . . .

*Id*.

      6.    On November 4, 2013, Ms. Sanders appealed BCI's denial of the preauthorization to BCI's Grievance and Appeal Coordinator, this time requesting "an immediate external review

**REPORT AND RECOMMENDATION - 6**

per the offer in your [October 30,2013] letter." 11/4/13 Ltr., attached as Ex. G to Diddle Aff. (Docket No. 24, Att. 3). Therein, Ms. Sanders explained again that Dr. McCowin determined that a sacroiliac joint fusion was the "only course of treatment" to treat her condition and that, based upon his experience, the procedure can improve health outcomes for her condition. *Id.*

7. On November 16, 2013, Ms. Sanders sent correspondence to the Medical Review Institute of America ("MRIOA") who BCI contracted to perform the requested independent external review. *See* 11/16/13 Ltr., attached as Ex. 6 to Wilkinson Aff. (Docket No. 26, Att. 3). Therein, in addition to again mentioning Dr. McCowin's experience and recommendations, Ms. Sanders indicated that, "prior to February 2013, BCI routinely covered this procedure and apparently made an unconscionable decision to consider this an investigational procedure based on unsupported criteria." *Id.*[4]

8. MRIOA conducted the requested independent external review, "review[ing] the medical records and documentation provided by the involved parties." 12/20/13 Ltr., attached as Ex. H to Diddle Aff. (Docket No. 24, Att. 4).[5] On December 20, 2013, MRIOA upheld BCI's previous adverse determination, concluding:

> The Blue Cross of Idaho Medical Policy, MP 6.01.023, for Diagnosis and Treatment of Sacroiliac Joint Pain states:

---

[4] Ms. Sanders points to no evidence in the record supporting the claim that sacroiliac joint fusion was "routinely covered" prior to February 2013 and/or, if so, how her medical situation corresponded with such coverage determinations.

[5] MRIOA's December 20, 2013 decision detailed (1) the professional qualifications of the physician who provided the independent external review, (2) the information provided to the IRO for review (including specific medical records), (3) Ms. Sanders's clinical history, (4) an explanation of findings, and (5) references used in support of the decision (three studies, dated 2010, 2005, and 2010 respectively). *See* 12/20/13 Ltr., attached as Ex. H (at BEA000037-39) to Diddle Aff. (Docket No. 24, Att. 4).

**REPORT AND RECOMMENDATION - 7**

> "Arthrography of the sacroiliac joint is considered investigational.
>
> Injection into the sacroiliac joint for diagnostic or therapeutic purposes is considered investigational.
>
> Radiofrequency ablation of the sacroiliac joint is considered investigational. Fusion/stabilization of the sacroiliac joint for the treatment of back pain presumed to originate from the SI joint is considered investigational, including but not limited to percutaneous and minimally invasive techniques."
>
> The requested joint fusion surgery is considered experimental/investigational based on the Medical Policy (#6.01.23) and applicable Plan language. High quality evidence is lacking for this procedure. The published reports are case reports and case series. There is insufficient peer reviewed medical evidence to determine the safety and efficacy of this procedure.
>
> The appeal letters do not address the key issue in this case, which is the lack of high quality evidence supporting this procedure.
>
> The highlighted sections of the attached Uniform Health Carrier External Review Model Act were reviewed and complied with in preparation of the review.
>
> The prior determination is upheld.

*Id.*

9. Also on December 20, 2013, Ms. Sanders (through Summit Orthopaedics) sent 53 pages of various medical records to BCI. *See* 12/20/13 Fax, attached as Ex. I to Diddle Aff. (Docket No. 24, Att. 4).[6]

10. On December 24, 2013, BCI denied Ms. Sanders's December 20, 2013 request for the same reasons referenced in its original, October 21, 2013 denial. *See* 12/24/13 Ltr., attached

---

[6] The undersigned's review of these materials appears to more-or-less coincide with those reviewed by MRIOA as reflected in its December 20, 2013 decision (with the exception of a December 19, 2013 treatment note indicating "significant left SI joint dysfunction"). *See* 12/20/13 Fax, attached as Ex. I to Diddle Aff. (Docket No. 24, Att. 4). Regardless, Ms. Sanders characterizes her December 20, 2013 fax as follows: "In December of 2013, Dr. McCowin made another request for the same procedure on the Plaintiff's left side." *See* Opp. to MSJ, p. 5 (Docket No. 26, Att. 1).

**REPORT AND RECOMMENDATION - 8**

as Ex. J to Diddle Aff. (Docket No. 24, Att. 4); *compare with* 10/21/13 Ltr., attached as Ex. B to Diddle Aff. (Docket No. 24, Att. 3), *and* 10/21/13 Ltr., attached as Ex. 1 to Wilkinson Aff. (Docket No. 26, Att. 3).

11. On March 4, 2014, Ms. Sanders's counsel, Dennis Wilkinson, requested copies of documents related to her claim. *See* 3/4/14 Ltr., attached as Ex. K to Diddle Aff. (Docket No. 24, Att. 4).

12. On April 29, 2014, BCI mailed information to Attorney Wilkinson, relating to the denial of her previous requests for preauthorization of sacroiliac joint fusion surgery. *See* Zelley Decl. at ¶ 2 (Docket No. 24, Att. 7); *see also* 4/29/14 correspondence, attached as Ex. A to Zelley Decl. (Docket No. 24, Att. 8).

13. On May 23, 2014, Attorney Wilkinson again appealed BCI's denial of the preauthorization request for sacroiliac joint fusion. *See* 5/23/14 Ltr., attached as Ex. L to Diddle Aff. (Docket No. 24, Att. 5).

14. On June 2, 2014, BCI responded to Attorney Wilkinson's appeal concerning its prior denial of coverage for to authorization requests for Ms. Sanders's proposed left and right sacroiliac joint fusion surgery, explaining in pertinent part:

> After a review of these prior authorization requests and the related medical records, I determined that they were correctly denied based on our Medical Policy 6.01.23 (copy enclosed). Fusion/stabilization of the sacroiliac joint for the treatment of back pain presumed to originate from the SI joint is considered investigational, including but not limited to percutaneous and minimally invasive surgical techniques. The current evidence on sacroiliac joint fusion surgery is insufficient to permit conclusions regarding the effect of these procedures on health outcomes; therefore, therefore, these techniques are considered investigational for the diagnosis and treatment of sacroiliac joint pain. Based upon my review of all relevant materials

**REPORT AND RECOMMENDATION - 9**

>and in accordance with Ms. Sanders's group health plan, I must uphold our denial of these prior authorization requests.

6/2/14 Ltr., attached as Ex. M to Diddle Aff. (Docket No. 24, Att. 5). The letter went on to provide the same justification for denying Ms. Sanders's latest request – namely the definition of investigational and the policy's exclusion of investigational procedures – as BCI's October 30, 2013 letter. *See id.*, *compare with* 10/30/13 Ltr., attached as Ex. D to Diddle Aff. (Docket No. 24, Att. 3).

15.     On September 2, 2014, Ms. Sanders (through Summit Orthopaedics) sent another preauthorization request for a left sacroiliac joint fusion, attaching clinical chart notes, medical reports, and physical therapy notes. *See* 9/2/14 Ltr., attached as Ex. N to Diddle Aff. (Docket No. 24, Att. 5).

16.     On September 5, 2014, BCI again denied preauthorization, concluding that the requested treatment was investigational under Ms. Sanders's policy. *See* 9/5/14 Ltr., attached as Ex. O to Diddle Aff. (Docket No. 24, Att. 6).

17.     On October 27, 2014, Ms. Sanders initiated the instant action, challenging BCI's decision that the sacroiliac joint fusion is investigational and therefore excluded under the policy under ERISA. *See* Compl. (Docket No. 1). Defendants now move for summary judgment. *See* MSJ (Docket No. 24).

### III.  REPORT

**A.     Legal Standards**

    1.     <u>Summary Judgment Standard</u>

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

**REPORT AND RECOMMENDATION - 10**

genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact" – a fact "that may affect the outcome of the case." *Anderson*, 477 U.S. at 247-48.

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. At 255. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

**REPORT AND RECOMMENDATION - 11**

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

    2.    <u>Standard of Review Under ERISA</u>

Ms. Sanders brings her claim pursuant to ERISA's civil enforcement provision. *See* 29 U.S.C. § 1132(a)(1)(B). Section 1132 provides that a "civil action may be brought . . . by a participant . . . to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." *Id*. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (emphasis added).

Here, there is no dispute that the Plan confers discretion upon BCI to interpret its terms and determine eligibility for benefits, with the Plan stating in no uncertain terms:

> BCI is vested with authority and discretion to determine eligibility for coverage and whether a claim for benefits is covered under the terms of this Plan, based on all the

**REPORT AND RECOMMENDATION - 12**

> terms and provisions set forth in this Plan, and also to determine the amount of benefits owed on claims which are covered.

Plan, attached as Ex. P (at BEA 000489) to Diddle Aff. (Docket No. 24, Att. 6); *see also* Opp. to MSJ, p. 7 (Docket No. 26, Att. 1) (Ms. Sanders agreeing that Plan "unambiguously grants 'the administrator or fiduciary discretionary authority to determine eligibility'"). When a plan confers discretionary authority on a plan administrator to construe the terms of a plan and to determine eligibility, the abuse of discretion standard applies. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115; *see also* Opp. to MSJ, p. 7 (Docket No. 26, Att. 1) (agreeing that "abuse of discretion is the appropriate standard of review"). Therefore, the abuse of discretion standard applies to the Court's consideration of BCI's denial of Ms. Sanders's preauthorization requests.

The Court may find that BCI abused its discretion if it (1) rendered a decision without explanation, (2) construed provisions of the policy in a way that conflicts with the plain language of the Plan, or (3) relied on clearly erroneous findings of fact. *See Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 (9th Cir. 1999)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. (quoting *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993)). The Court must uphold the decision of an ERISA plan administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Boyd*, 410 F.3d at 1178 (quoting *Estate v. Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997)).

**REPORT AND RECOMMENDATION - 13**

It is against this backdrop that the Court considers the propriety of BCI's denials of Ms. Sanders's preauthorization requests.[7]

## B.     BCI Did Not Abuse its Discretion in Denying Ms. Sanders's Preauthorization Requests

The Plan clearly excludes investigational treatment from coverage; the question therefore presented is whether sacroiliac joint fusion constitutes investigational treatment. Based upon the evidence in the record, the undersigned finds that BCI reasonably concluded that sacroiliac joint fusion is an investigational treatment and, likewise, not covered under the Policy. As a result, it cannot be said that BCI abused its discretion when it denied Ms. Sanders's preauthorization requests.

When reviewing Ms. Sanders's claims, BCI medical directors reviewed all medical records submitted, in turn relying upon medical policies supported by a then-current analysis of evidence-based medical literature providing a comprehensive evaluation of the clinical effect and appropriateness of a given medical procedure – in this case, sacroiliac joint fusion. And, relevant here, MP 6.01.23 (adopted from the Blue Cross Blue Shield Association Technology Evaluation Center which synthesizes available evidence on the diagnosis, treatment, management, and prevention of disease) explicitly identifies sacroiliac joint fusion as an investigational treatment. *See* MP 6.01.23, attached as Ex. F (at BEA 000008, 13-14)

---

[7] In the context of a motion for summary judgment in which the abuse of discretion standard is applied – as is the case here – the motion for summary judgment itself serves as the conduit to bring the legal question to the Court, such that the usual tests applied on summary judgment (such as whether a genuine dispute of material fact exists) do not apply. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) ("We have previously held, however, that where the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.").

**REPORT AND RECOMMENDATION - 14**

("Fusion/stabilization of the sacroiliac joint for treatment of back pain presumed to originate from the SI joint is considered **investigational** . . . . The current evidence on sacroiliac joint arthrography, injections, RFA, and fixation/fusion is insufficient to permit conclusions regarding the effect of these procedures on healthcare outcomes. Therefore, these techniques are considered investigational for the diagnoses and treatment of sacroiliac joint pain.") (emphasis in original).[8]

Then, at Ms. Sanders's request, BCI's denial was submitted to MRIOA to conduct an independent external review. At the review stage, the assigned physician (who is Board certified by the American Board of Orthopaedic Surgery and General Orthopaedic Surgery) reviewed all of the information provided to him (and separate medical references) and ultimately upheld BCI's decision to deny Ms. Sanders's preauthorization requests. *See* 12/20/13 Ltr., attached as Ex. H to Diddle Aff. (Docket No. 24, Att. 4) ("There is insufficient peer review medical evidence to determine the safety and efficacy of [sacroiliac joint fusion]. The appeal letters do not address the key issue in this case, which is the lack of high quality evidence supporting this procedure.").

In contrast, Ms. Sanders offers no evidence suggesting that BCI failed to provide an explanation or acted contrary to the plain language of the Plan. Instead, she understandably argues that BCI's denials are simply wrong; but, without more, this is not enough to conclude that BCI acted unreasonably so as to overcome the abuse of discretion standard. Moreover, Ms.

---

[8] That the state of medical research may be such that the medical evidence is in fact inconclusive on the actual (in)efficacy of sacroiliac joint fusion is noteworthy, however of no moment when analyzing BCI's conduct against an abuse of discretion standard. Of consequence here is that BCI was not acting unreasonably when it consulted MP 6.01.23 vis à vis Ms. Sanders's preauthorization requests.

**REPORT AND RECOMMENDATION - 15**

Sanders offers no evidence contradicting either of BCI's or MRIOA's rationales in denying her preauthorization requests – other than from her treating physician, Dr. McCowin, who prescribed the treatment.  Again, without actual evidence to back her claims up, this is not enough to render BCI's decisions arbitrary and capricious.

In short, under the applicable abuse of discretion standard, the Court is not called upon to decide whether sacroiliac joint fusion is once-and-for-all an investigational medical treatment.  Instead, the inquiry is far more limited: the only issue before the Court is whether, based upon the record, BCI abused its discretion in concluding that sacroiliac joint fusion is investigational.  The undersigned appreciates that, on a human level, Ms. Sanders is suffering from back pain and desperately wants to undergo a procedure that may help alleviate her pain.  But the question is not whether a humanitarian decision was made; instead, it is whether BCI simply acted reasonably under the terms of the Plan.  *See Canseco v. Cons. Laborers Pension Trust*, 93 F.3d 600, 609 (9th Cir. 1996) (question is not "whose interpretation of the plan documents is most persuasive, but whether the . . . interpretation is unreasonable.").  Under that standard, BCI's decision was grounded on a reasonable factual basis for concluding that sacroiliac joint fusion is investigational.  Though problems may exist regarding the full scope of the medical evidence surrounding such treatment, it is within BCI's discretion to weigh that evidence, and BCI did not abuse that discretion in denying Ms. Sanders's preauthorization requests.  Defendants' Motion for Summary Judgment should be granted.

## IV.  RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED THAT Defendants' Motion for Summary Judgment (Docket No. 24) be GRANTED.

Pursuant to Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."



DATED:  **August 18, 2016**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 17**